```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
RICHARD POLANCO,                        06 Civ. 1721 (RMB)(DFE)
                    Petitioner,

         - against -                    REPORT AND RECOMMENDATION
                                        TO JUDGE BERMAN
ROBERT ERCOLE,
Superintendent,
Green Haven Correctional Facility,
                    Respondent.
-----------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

   Richard Polanco's pro se habeas corpus petition challenges his conviction for acting-in-concert murder, after a jury trial in 2001 before Justice Michael J. Obus in Supreme Court, New York County. Justice Obus sentenced him to a term of 22 years to life. On December 7, 2004, the Appellate Division affirmed the conviction, *People v. Polanco,* 13 A.D.3d 100, 786 N.Y.S.2d 437 (1st Dep't 2004), *lv. denied*, 4 N.Y.3d 802, 795 N.Y.S.2d 177 (N.Y. Feb. 18, 2005)(Table).

   Polanco's petition was notarized on October 12, 2005, but it was received by our Court's Pro Se Office on February 17, 2006. On June 23, 2006, Judge Berman signed an Order of Reference to me for a report and recommendation.

   Polanco was represented by appointed counsel Eric Greenbush during the suppression hearings before Justice Obus. Retained counsel Daniel J. Lynch represented Polanco at the jury trial before Justice Obus. Throughout the direct appeal, Polanco had appointed counsel Saadia Aleem from the Office of the Appellate

Defender.

Only two claims were presented to the Appellate Division:

1. A claim that Mr. Greenbush was ineffective because, at the suppression hearing, he should have presented evidence to rebut the police testimony that Polanco voluntarily came out of his apartment and accompanied the police to the station. However, the Appellate Division ruled:

> . . . This claim is not reviewable because it involves facts outside the record, particularly as to the information available to counsel and the basis for his hearing strategy (*People v. Love*, 57 N.Y.2d 998, 457 N.Y.S.2d 238, 443 N.E.2d 486 (1982)). Contrary to defendant's appellate argument, counsel's statements at the end of the hearing do not establish that he should have introduced evidence supporting a *Payton/Dunaway* claim. To the extent that the present record permits review, it strongly indicates that defendant was not prejudiced by counsel's allegedly deficient performance, because there was no viable *Payton/Dunaway* claim (*see e.g. People v. Massillon*, 289 A.D.2d 103, 734 N.Y.S.2d 162 (2001), *lv. denied* 97 N.Y.2d 731, 740 N.Y.S.2d 704, 767 N.E.2d 161 (2002); *People v. Carter*, 276 A.D.2d 347, 714 N.Y.S.2d 459 (2000), *lv. denied* 96 N.Y.2d 733, 722 N.Y.S.2d 799, 745 N.E.2d 1022 (2001)). There was credible testimony that defendant voluntarily came out of the apartment in question and accompanied the police to the station.

*People v. Polanco,* 13 A.D.3d 100, 786 N.Y.S.2d 437 (1st Dep't 2004). If there were facts outside the record to support this claim, then they could have been presented to the state courts in a motion under New York Criminal Procedure Law § 440.10. But

Polanco did not make any such motion. Neither he nor his appellate attorney has ever said what evidence might have rebutted the police testimony, let alone whether Mr. Greenbush knew about it.

    2. A claim that the sentence was excessive and should have been reduced to 15 years to life. This claim was based solely on state law. Polanco did not present the state courts with any claim that his sentence violated federal law.

Polanco's petition to our Court contains only the same two claims as discussed above.

On November 9, 2006, Assistant District Attorney Martin J. Foncello served and filed a Notice of Motion to dismiss the petition for lack of exhaustion. His affirmation, at paragraph 11, said:

> 11. Both of petitioner's claims are unexhausted because he did not pursue the avenues for relief available to him in state court. First, by failing to raise his ineffective assistance of counsel claim by way of a post-judgment motion in the trial court, petitioner has not afforded the state court the initial opportunity to grant relief. Secondly, to the extent petitioner means to raise a claim that his sentence was "cruel and unusual" in violation of the Eight Amendment, his claim is unexhausted. Petitioner did not raise that constitutional challenge in his direct appeal, nor has he made a post-judgment motion in the trial court to set aside his sentence as unlawful.

In response, Polanco essentially concedes that neither of his claims was exhausted. And so he asks for a stay of this

habeas proceeding.  In a letter dated November 27, 2006, Polanco writes:

> At this moment I would like to request that this action be placed in a lay file [sic] so a lower court action can be filed and heard.
>
> Therefore, I am requesting that I may be granted a ninety day (90) grace period. . . .

I am treating his letter request as a motion to stay this habeas proceeding while he might, at long last, pursue his ineffective assistance claim in a §440.10 motion to Justice Obus in New York Supreme Court.  However, I conclude that our Court has no jurisdiction to delay a habeas proceeding where the petition does not contain even one exhausted claim.

## BACKGROUND

ADA Foncello has provided copies of the Brief and Reply Brief that Polanco's counsel submitted to the Appellate Division. I think it is unnecessary to review the transcripts or other documents in the state record in order to dispose of this case. The following details are drawn from the Appellate Division briefs written by the Office of the Appellate Defender, as well as from ADA Foncello's affirmation.

Polanco's conviction was based on his involvement in the killing, on September 15, 1999 in Spanish Harlem, of Nicholas Navarro, a fellow member of the NETA gang.  Hours before, at a meeting, "Red," the leader of NETA, had ordered that Navarro be

4

"erased" for specified transgressions.  Red's order, and the reasons for it, were listed in a "minuta" dictated by Red and written down by Polanco, who was 19 at the time.  The minuta was signed by Polanco and by Red and by three other gang members -- Manny Negron, Victor Medina and Heriberto Perez.

After the meeting, another NETA member -- Miguel Ortiz -- joined Polanco, Medina and Perez in the undertaking to carry out the order to "erase" Navarro; Ortiz brought with him a gun.  Around 7:30 a.m., the four of them went to Navarro's apartment and tricked him into going up to the roof.  On the roof, they hesitated for fifteen or twenty minutes, but ultimately Medina grabbed the gun and shot Navarro in the back of the head.

During the afternoon and evening of the same day, the police questioned Medina and Perez, who each gave several statements implicating Polanco as well as themselves.  Around midnight, Detective Serge Ruggio and Sergeant William Cannon went to see Polanco at his apartment.  It is undisputed that they had enough information from Medina and Perez to establish probable cause, but they did not get an arrest warrant.  Polanco came with them to the station house.  There, he waived his *Miranda* rights and made several statements -- oral and written -- admitting that he acted in concert with the others but claiming that "I deeply in my heart thought that we were just going to beat him up, and I was proven wrong."  (Def. Br. to App. Div., p. 5, quoting Richie

5

Polanco's statement of Sept. 16, 1999 at 8:20 a.m.) He also turned over the minuta to the police.

### The claim that the suppression attorney was ineffective

On November 15, 1999, Polanco's attorney Mr. Greenbush filed a "boilerplate Omnibus Motion in which he requested suppression of the statements, and in the alternative, a *Huntley* hearing, as well as suppression of the physical evidence, or a *Mapp* hearing." (Def. Br. to App. Div., p. 12.) At the pretrial hearing on January 30, 2001, Mr. Greenbush asserted that Polanco had been illegally arrested, "grabbed from inside his apartment." The police witnesses, however, insisted that they had not placed Polanco under arrest at his apartment and that he had voluntarily accompanied them to the police station. Mr. Greenbush never introduced any evidence to rebut that police testimony.

In a written decision dated June 14, 2001, Justice Obus denied the suppression motion. He found that Polanco had voluntarily agreed to go with the detectives from the doorway of his apartment to the stationhouse. Justice Obus wrote: "Notwithstanding defense arguments to the contrary which have absolutely no support in the record, Polanco was not arrested in the doorway of his home . . . ." (Def. Br. to App. Div., p. 14, quoting Justice Obus's decision.)

At trial, the issue for the jury was murder or manslaughter -- whether Polanco shared the shooter's homicidal intent, or

6

whether Polanco thought the victim would only be beaten up. (Def. Br. to App. Div., pp. 10, 15.)  It seems clear that Polanco's chances for a manslaughter verdict were harmed by his post-arrest statements and by the "minuta" written by him hours before the shooting, recording the agreement that the victim was to be "erased."  (*Id.*, p. 7.)

On appeal, Ms. Aleem argued that the conviction should be reversed because "Greenbush's failure to properly assert [Polanco's] Fourth Amendment rights under *Payton* and under *Dunaway* resulted in the introduction at trial of improperly obtained and highly prejudicial evidence." (Def. Br. to App. Div., p. 18.)  Ms. Aleem's brief stated:

> Court-appointed counsel Eric J. Greenbush repeatedly asserted, throughout the course of his representation of Richie, that Richie had been physically dragged from his apartment and arrested without a warrant. [1] *See, e.g.*, H. 421-22.  Such an arrest violates federal constitutional law as articulated in *Payton v. New York,* 4[4]5 U.S. 573 (1980)(absent consent or exigent circumstances, a warrantless arrest in the home violates the Fourth Amendment . . .).  More importantly, Richie's unlawful arrest invalidated the use at trial of any statements resulting from that illegal

---

[1] Ms. Aleem did not specify any evidence to show that Polanco was "dragged."  Instead, after the word "warrant," she dropped a footnote that said (with my emphasis):  "We **presume** that Greenbush had reason to believe that, in fact, Richie had been illegally pulled from his home and arrested. According to the New York State Bar Association's 'The Code of Professional Responsibility', §7-102(A)(5), a lawyer may not, in the representation of a client, '[k]nowingly make a false statement of law or facts.'  This Court has held that [a] lawyer who does so, is guilty of misconduct. *Matter of Padilla*, 109 A.D.2d 247, 248 (1st Dep't 1985)."

> arrest. *Dunaway v. New York*, 442 U.S. 200 (1979). However, Greenbush failed to present evidence that would support his assertions that a *Payton* violation had occurred. Moreover, he failed to request a *Dunaway* hearing asking for the resulting statements to be suppressed as fruits of an illegal arrest.

(Def. Br. to App. Div., pp. 17-18.)

The last sentence was an hyperbolic summary of what Ms. Aleem had written at page 4: "counsel failed to formally ask the court for a *Dunaway* suppression hearing." Mr. Greenbush did request a *Huntley* suppression hearing. After the hearing, in the decision finding that Polanco's statements were voluntary, Justice Obus clearly understood that *Payton* and *Dunaway* were implicated. Ms. Aleem's brief at page 14 said:

> In his June 14, 2001 decision denying suppression, Justice Obus found that Richie had not been arrested in the doorway of his home, but rather he had voluntarily agreed to go with the detectives. See Justice Obus's Decision of June 14, 2001. Justice Obus's decision was based on Greenbush's failure to provide evidence to the contrary. See Id. ("Notwithstanding defense arguments to the contrary which have absolutely no support in the record, Polanco was not arrested in the doorway of his home. . . .").

The Appellate Division responded to the ineffective assistance argument as follows:

> Defendant argues on appeal that he received ineffective assistance of counsel at his suppression hearing because his attorney failed to make a proper argument for suppression of his statements pursuant to *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Dunaway v.*

8

> *New York,* 442 U.S. 200, 99 S.Ct. 2248, 60
> L.Ed.2d 824 (1979), and failed to call any
> witnesses in support of such a theory of
> suppression.  This claim is not reviewable
> because it involves facts **outside the record,
> particularly as to the information available
> to counsel** and the basis for his hearing
> strategy (*People v. Love*, 57 N.Y.2d 998, 457
> N.Y.S.2d 238, 443 N.E.2d 486 (1982)).

*People v. Polanco*, 13 A.D.3d 100, 786 N.Y.S.2d 437 (1st Dep't 2004)(with my emphasis).  In *People v. Love*, the New York Court of Appeals wrote: "We cannot conclude that defendant counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that might have been developed had an appropriate after-judgment motion been made pursuant to CPL 440.10."  457 N.Y.S.2d at 239 (citation and quotation omitted).

ADA Foncello's November 2006 affirmation, at pages 3-4, says:

> Petitioner next filed an application for
> leave to appeal to the New York Court of
> Appeals.  In a supplemental letter dated
> February 9, 2005, petitioner argued that the
> First Department's conclusion that his claim
> of ineffective assistance of counsel was "not
> reviewable" was in conflict with the
> jurisprudence of the appellate division of
> another judicial department.  He further
> argued that the Court should grant leave to
> resolve this purported conflict among the
> appellate courts as to "when is a record on
> appeal sufficient to establish
> ineffectiveness, such that direct appeal is
> the appropriate mechanism for reviewing that
> claim" (Leave Letter at 3).  That application
> was denied by the Honorable George Bundy
> Smith on February 18, 2005. . . .

Despite the rulings of the Appellate Division and Judge Bundy, Polanco never presented the state courts with the "facts outside the record, particularly as to the information available to counsel."

Accordingly, this claim is unexhausted. Under New York law, to raise a claim of ineffective assistance of counsel, the normal appropriate procedural vehicle is a motion to vacate pursuant to New York Criminal Procedure Law § 440.10, which states:

> 1. At any time, after the entry of judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment on the ground that . . .
>
> (h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States.

Such a claim may be raised on direct appeal only if all the factual information necessary to determine the claim appears in the trial record. *Walker v. Dalsheim*, 669 F.Supp. 68 (S.D.N.Y. 1987)(citing cases)(Grubin, M.J., adopted by Leisure, J.); *Davis v. Herbert*, 2001 WL 1464634, *3 (S.D.N.Y. Nov. 19, 2001)(Cote, J.); *Hernandez v. Filion*, 2004 WL 286107, *17, n. 36 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.) [adopted by Berman, J. on 3/19/04]. As the Appellate Division pointed out, that is not the case here. Rather, Polanco's claim about Mr. Greenbush "involves facts outside the record, particularly as to the information available to counsel and the basis for his hearing strategy." 786 N.Y.S.2d

at 438.

A federal habeas court cannot entertain Polanco's complaint about Mr. Greenbush, because Polanco has not "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Moreover, §2254(c) states:

> (c) An applicant shall not be deemed to have exhausted the remedies . . . if he has the right under the law of the State to raise, by any available procedure, the question presented.

The remedy of a 440.10 motion is still available to Polanco.

### The claim that the sentence was excessive

Polanco's complaint about his sentence has always been presented in terms of state law only, and never in terms of any federal constitutional law. Ms. Aleem's brief to the Appellate Division mentioned Polanco's age (19 at the time of the murder), and the sentences received by the other participants in the murder. She requested the Appellate Division to modify the "particularly excessive and harsh sentence" in the interests of justice. See N.Y.Crim. Pro. Law §470.15(2)(c) and §470.15(6)(b).

Even if we assume that Polanco now wants to challenge his sentence on the basis of federal law, the precedents are clear that any such claim is unexhausted, whether there remains any state remedy or not, because no claim was fairly presented to the highest state court that the sentence violated the U.S. Constitution. *Picard v. O'Connor*, 404 U.S. 270, 275, 92 S.Ct.

11

509 (1971); *Cox v. Miller*, 296 F.3d 89 (2d Cir. 2002); *King v. Cunningham*, 442 F. Supp.2d 171 (S.D.N.Y. 2006). If Polanco wants to raise a constitutional claim in state court, he may be able to make a motion to set aside sentence under CPL § 440.20(1). However, the Second Circuit has held that "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Kelly*, 969 F.2d 1381, 1383 (2d Cir. 1992).

<u>Polanco's request for a stay</u>

I have interpreted Polanco's November 27, 2006 letter as a request for a stay "so a lower court action can be filed and heard." In *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528 (2005), the U.S. Supreme Court held that a district court has discretion to stay a <u>mixed petition</u> to allow a petitioner to present his unexhausted claims to the state court in the first instance and then to return to federal court for review of his perfected petition. Polanco's petition, however, is not a "mixed" petition containing both exhausted and unexhausted claims; it contains only unexhausted claims.

When a petition contains only unexhausted claims, the case law is clear that our Court has no jurisdiction to stay the petition. See *Shomo v. Maher*, 2005 WL 743156, *7, n. 12 (S.D.N.Y. Mar. 31, 2005), where Judge Karas wrote:

> . . . While a stay might permit Shomo the opportunity to exhaust his state claims

12

>without risk that his petition would be time
>barred, there is no basis to retain
>jurisdiction over a petition that contains
>only unexhausted claims.

Accordingly, we must exercise one of two options: (a) dismiss for failure to exhaust, or (b) deny on the merits pursuant to § 2254(b)(2).

The first approach has been adopted in the following cases in the Eastern and Southern Districts: *Shomo v. Maher*, 2005 WL 743156, *6-8; *Williams v. Rabideau*, 2004 WL 1336348 (S.D.N.Y. June 15, 2004)(Swain, J.); *Ramos v. Superintendent*, 2002 WL 1226860 (S.D.N.Y. Apr. 12, 2002)(Peck, M.J.)[adopted by Preska, J. on 5/15/02]; *Baity v. McCary*, 2002 WL 31433293 (S.D.N.Y. Oct. 31, 2002)(Peck, M.J.) [adopted by Preska, J. on 4/10/03]; *Hust v. Costello*, 329 F. Supp.2d 377 (E.D.N.Y. 2004) (Spatt, J.); *Carpenter v. Reynolds*, 212 F. Supp.2d 94 (E.D.N.Y. 2002)(Spatt, J.).

The second option (denial on the merits) has been adopted in the following cases: *King v. Cunningham*, 442 F.Supp.2d 171, 182 (S.D.N.Y. 2006)(Marrero, J.); *Hinds v. Fischer*, 2006 WL 1993249 (S.D.N.Y. June 30, 2006) (Maas, M.J.) [adopted by Rakoff, J. on 8/2/06]; *Hanson v. Albaugh*, 2000 WL 426420 (April 20, 2000)(Koeltl, J.); *Terrence v. Senkowski*, 1999 WL 301690 (S.D.N.Y. May 12, 1999)(Chin, J.); *Oppenheimer v. Kelly*, 1999 WL 435159 (S.D.N.Y. Jun 24, 1999)(Chin, J.). See also *Moore v. Schoeman*, 288 F.3d 1231 (10th Cir. 2002).

I recommend that Judge Berman follow the first option, and dismiss Polanco's habeas petition for lack of exhaustion.

If Polanco returns to the New York courts and exhausts his state remedies, then theoretically he could return to federal court with a habeas petition. However, the one-year statute of limitations has expired, 28 U.S.C. §2244(d)(1). Polanco's conviction became final 90 days after February 18, 2005 (since he had 90 days during which he could have sought a writ of certiorari to the U.S. Supreme Court). He had until May 19, 2006 to file a federal habeas petition; that deadline could be extended or tolled if he had "properly filed [an] application for State post-conviction or other collateral review" that was pending in the New York courts. 28 U.S.C. § 2244(d)(2). Polanco's petition was received by the Pro Se Office on February 17, 2006, but it was notarized in prison on October 12, 2005. If we assume that Polanco delivered it for mailing to a federal court in October 2005, then he would be deemed to have filed seven months before the statute of limitations expired on May 19, 2006. Since then, however, more than a year has now elapsed. In *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120 (2001), the Supreme Court held that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2). As a result, § 2244(d)(2) does not provide a basis in law for tolling merely

14

because a habeas petition has been pending in federal court.

Accordingly, Polanco could return to federal court only if he could show that he is entitled to equitable tolling. In *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807 (2005), the Supreme Court reiterated two requirements for equitable tolling:

> . . . Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.

125 S.Ct. at 1814 (citation omitted). To meet the first requirement, Polanco must show that he acted with reasonable diligence throughout the entire time period he seeks to toll. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). It seems highly unlikely that he would be able to meet the two requirements. In December 2004, the Appellate Division warned him that his claim about Mr. Greenbush would require "facts . . . as to the information available to counsel." Yet Polanco has failed to put any such facts into the record.

Request for appointment of counsel

Polanco has asked our Court to appoint counsel to represent him in this habeas proceeding. The Second Circuit has said:

> When deciding whether to assign counsel to an indigent civil litigant under 28 U.S.C. § 1915(e)(1), we look first to the "likelihood of merit" of the underlying dispute. *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir.1997); *see also Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir.1989)

> (*per curiam*). Thus, even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor. See *Cooper*, 877 F.2d at 172. Only **after** an initial finding that a claim is likely one of substance, will we consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute. *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986).

*Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)(with my emphasis). I find that there is no "likelihood of merit" in Polanco's petition, and that he does not qualify for appointed counsel.

CONCLUSION AND RECOMMENDATION

For all the reasons set forth above, I recommend that Judge Berman dismiss Polanco's habeas petition for lack of exhaustion.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy, i.e., **no later than July 24, 2007,** by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Richard M. Berman, U.S.D.J. at Room 650, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street, New York, NY 10007. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(e). Any request for an extension of time must be addressed to the District Judge.

_____
DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181

Dated: July 5, 2007
       New York, New York


Copies of this Report and Recommendation are being mailed to:

Richard Polanco, #01-A-6750
Green Haven Correctional Facility
Box 4000
Stormville, New York 125582

Martin J. Foncello, Esq.
Assistant District Attorney
New York District Attorney
One Hogan Place
New York, New York   10013

Hon. Richard M. Berman